IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

DALE HARPER,                       )
                                   )
            Plaintiff,             )
                                   )
                                   )        CIV-11-995-HE
v.                                 )
                                   )
JAMES RUDEK, Warden, et al.,       )
                                   )
            Defendants.            )

SUPPLEMENTAL REPORT  AND  RECOMMENDATION

On September 7, 2011, Plaintiff, a state prisoner appearing *pro se* and *in forma pauperis*, filed this civil rights action pursuant to 42 U.S.C. § 1983 alleging numerous constitutional violations and naming as Defendants several state correctional officials.[1] Among other claims, Plaintiff alleged that Defendant Hernandez, a guard at Oklahoma State Reformatory ("OSR") where Plaintiff was confined at the time he filed the action, had been deliberately indifferent to Plaintiff's safety needs. As factual support, Plaintiff alleged that "Ms. Hernandez came in my cell twice, and asked me to deliver Packages for her twice, on

---

[1]Plaintiff is a prolific litigant in this Court, having filed eight civil rights actions in addition to the instant action alleging various civil rights violations against correctional officials, jail officials, the District Court of Woodward County, Oklahoma, the district court judge handling his state court criminal case, prosecutors, witnesses, private citizens, the Oklahoma Indigent Defense System, Woodward County, the Sheriff of Woodward County, a United States Magistrate Judge, and his defense attorneys.  Two of these actions have been dismissed as duplicative and malicious. Harper v. Rudek, Case No. CIV-12-455-HE; Harper v. Rudek, Case No. CIV-12-456-HE. Plaintiff's pleadings in this case and in his previous cases indicate he believes nearly every jail, court, or correctional official he encounters has been guilty of some wrongdoing directed toward him for retaliatory reasons.

the second refusal she allowed, 3-5 inmates to redlight from 2 pod, into 3 pod, to Beat and rob me, and to then allow them out of 3 pod without misconducts, then on the way to medical she threatened me telling me I needed to keep my mouth shut." Complaint, at 2.[2]

In another claim, Plaintiff alleged that his First, Eighth, and Fourteenth Amendment rights were violated when he was "choked and repeatedly punched for complaining [of] being deprived of my property" while he was confined at "Vinita, because I would not plead guilty, for a competency examination" and that he "was choked by an orderly for telling him to [expletive] himself, and repeatedly punched in the forehead. He was fired." The only Defendant named in the Complaint with respect to this claim was the Executive Director of the Oklahoma Forensic Center located in Vinita, Oklahoma, and operated by the Oklahoma Department of Mental Health and Substance Abuse.

The matter was referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B), and the undersigned entered a Report and Recommendation recommending that all seven counts asserted in Plaintiff's Complaint be dismissed with prejudice pursuant to 28 U.S.C. § 1915. Report and Recommendation (Doc. # 37). In an Order entered January 30, 2012, District Judge Heaton agreed that five of Plaintiff's seven claims should be dismissed for failure to state a claim and that amendment would be futile. However, Judge Heaton found that Plaintiff had stated a claim of deliberate

---

[2]On another page of the Complaint, Plaintiff stated that "[o]n 6-27-11 Ms. Hernandez allowed 3 to 5 inmates to redlight from 2 pod, to 3 pod on C-Unit, after supper, . . . for the specific purpose of beating me down and robbing me [b]ecause I would not deliver Packages for her. She then allowed them to go back to Pod 2 without repercussions. Then when I went to medical she threatened me telling me I needed to keep quiet if I knew what was best." Complaint, at 4.

indifference to his safety needs against Defendants Hernandez in count two of the Complaint[3]

and the unidentified "John Doe" orderly at the Oklahoma Forensic Center in count seven of

the Complaint. Order (Doc. # 53). Plaintiff's request for leave to amend his Complaint was

granted, and the matter was re-referred the matter to the undersigned Magistrate Judge for

further proceedings consistent with the Order.  On March 21, 2012, Plaintiff filed an

Amended Complaint naming Defendants Hernandez and "unknown John Doe orderly." (Doc.

# 69).  Plaintiff served Defendant Hernandez with process, but Defendant "unknown John

Doe orderly" has not been served with process.

Defendant Hernandez has caused the filing of a Special Report consistent with

Martinez v. Aaron, 570 F.2d 317 (10th Cir. 1978), and the Court's Order.  (Doc. # 104).

Defendant Hernandez has also moved to dismiss or, alternatively, for summary judgment.

(Doc. # 109).  Plaintiff has responded to Defendant Hernandez's Motion. (Doc. # 124).

I. Plaintiff's Allegations Against Defendant Hernandez

Plaintiff alleges in the Amended Complaint that "[w]hile at OSR I was beaten and

robbed because I would not deliver packages to the U.A.B.'s[.] [Correctional officer]

Hernandez let them come into the pod after chow, then to beat me down and rob me, then she

opened the pod door to let them go back to 2 pod from 3 pod on C-unit while carrying my

property, not even trying to hide the contents from the robbery. [Correctional officer]

---

[3]In reviewing the allegations in the Complaint, Judge Heaton noted that the Court understood
the term "redlight" to refer to the practice of an inmate not authorized to enter a particular cell pod
following another inmate into the cell pod from a common area while the door is open or unlocked.
Order (Doc. # 53), at n. 5.

Herndez [sic] did this while there was absolutely no scheduled movement." Amended Complaint, at 2.  Plaintiff alleges he filed two grievances concerning these allegations, but that the Oklahoma Department of Corrections's ("ODOC") "Director designee . . . refused to answer the grievance." Id.

On another page of the Amended Complaint, Plaintiff alleges that on an unidentified date Defendant Hernandez "told me that she needed some one to drop a few things off for her, and a safe place to leave them (she didn't say what at this time.)  I said, why don't you ask my cellie?  She said because he's an indian an [sic] runs with them.  I said so.  She said they're why her daughter doesn't work at OSR anymore, and why she is on C-unit instead of D-unit, they can't keep they're [sic] mouths shut.  I said OK and walked off.  Then 3 or 4 days before the beating, she pulled me up again before I went into the pod after supper, and tried to hand me two packages, one about the size of a pack of marlboro 100's, and another about the size of a golf ball, wrapped in black tape.  She said tomorrow I need you to give the bigger one to Shane (?) on 4 pod an [sic] the small one is yours ( I still don't know what is [sic] was).  I said this is retarded, its [sic] a hell of a lot easier for you to simply leave it in the hallway or somethin [sic].  I don't need this, I got money, this crap always goes bad somehow, I ain't gettin [sic] stuck holdin [sic] the bag on this, ain't you learned anything from what happened on D-unit, theres [sic] too many run an [sic] tell its [sic].  I then walked away." Amended Complaint, at 4-5.

Plaintiff alleges that "[o]n 6-27-11 after Supper, everybody on the pod was standing outside of their cells waiting for something to happen.  I stayed in my cell, as it did not

concern me, I thought.  Then one at a time 3 guys from 2 pod came into my cell, and started

beating me after they dragged me off the bunk.  I was told after it was over, that the next time

I was invited to deliver a package, I had better do it.  And for punishment, they were taking

my property. . .  They then walked out of my cell and down the stairs with my property, and

stood by the door patiently waiting for Ms. Hernandez to let them out of C-3 to go back to

C-2.  This is 'all' on 'video.'  I waited for them to leave[.] I then went downstairs and took

a shower.  I started getting real dizzy.  I felt like I was falling down.  Then at 8 o'clock count,

I told Ms. Hernandez that I needed to go to medical.  While waiting out front for Ms. McGill,

Ms. Hernandez told me: If you know whats [sic] good for you, you'll keep your mouth shut."

Amended Complaint, at 4.  Furthermore, Plaintiff alleges that "Ms. Hernandez unlocked the

pod door, and allowed them to walk back to C-2 from C-3, carrying my property, not even

trying to hide the fruits of the robbery[. S]he did not stop them to question where they got

this property, she did nothing, to prevent them from going back to pod C-2.  There were no

repercussions.  Then with maliscious [sic] and sadistic motives, she told me if I knew what

was good for me, I'd keep my mouth shut, while I was waiting for Ms. McGill to escort me

to medical."  Amended Complaint, at 4.  He alleges "Ms. Hernandez wanted to retaliate

against me for not delivering packages." Amended Complaint, at 5.

## II. Motion for Summary Judgment Standard of Review

Defendant Hernandez relies on documents outside of the pleadings in support of her

dispositive Motion, and Plaintiff's response to the Motion also relies on documentary

evidence outside of the pleadings.  Therefore, Defendant Hernandez's Motion will be

considered under the standard of review governing motions for summary judgment under Fed.R.Civ.P. 56 except to the extent the motion is deemed one seeking dismissal under Fed.R.Civ.P. 12(b)(6).

Summary judgment may be granted when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  In considering a motion for summary judgment, the court reviews the evidence and inferences drawn from the record in the light most favorable to the nonmoving party.  Burke v. Utah Transit Auth. & Local, 462 F.3d 1253, 1258 (10th Cir. 2006)(quotation omitted), cert. denied, 550 U.S. 933 (2007).  A dispute is "genuine" if a reasonable jury could return a verdict for the nonmoving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Material facts" are "facts which might affect the outcome of the suit under the governing law." Id.  "At the summary judgment stage, a complainant cannot rest on mere allegations, but must set forth by affidavit or other evidence specific facts, which for purposes of the summary judgment motion will be taken to be true." Burke, 462 U.S. at 1258 (internal quotation marks and citations omitted).[4]  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)(quotations omitted).

---

[4]In a prisoner civil rights case such as this one, the plaintiff's complaint is treated as an affidavit if it alleges facts based on the plaintiff's personal knowledge and has been sworn under penalty of perjury. Hall, 935 F.2d at 1111.

A motion to dismiss may be granted when the plaintiff has "failed to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).   All well-pleaded facts, as distinguished from conclusory allegations, are accepted as true, and those facts are viewed in the light most favorable to the non-moving party. Beedle v. Wilson, 422 F.3d 1059, 1063 (10th Cir. 2005). To survive a motion to dismiss, a complaint must present factual allegations that "raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).   This review contemplates the assertion of "enough facts to state a claim to relief that is plausible on its face."  Id. at 570.   Thus, "when the allegations in a complaint, however true, could not raise a [plausible] claim of entitlement to relief," the cause of action should be dismissed. Id. at 558.

A *pro se* plaintiff's complaint must be broadly construed under this standard. See Erickson v. Pardus, 551 U.S. 89, 94 (2007); Haines v. Kerner, 404 U.S. 519, 520 (1972). However, the generous construction to be given the *pro se* litigant's allegations "does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based." Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).  See Whitney v. New Mexico, 113 F.3d 1170, 1173-1174 (10th Cir. 1997)(courts "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf").

III. Material, Undisputed Facts

Plaintiff has made several accusations of official misconduct in his pleadings, but he has not specifically disputed the statement of material, undisputed facts set forth in

Defendant Hernandez's Motion for Summary Judgment.  Therefore, the following facts are deemed material, undisputed facts for the purpose of resolving the pending Motion:

1. Plaintiff is incarcerated in the custody of ODOC beginning April 22, 2010, to serve terms of imprisonment for two convictions, assault and battery with a dangerous weapon and assault and battery on a police officer, entered in the District Court of Woodward County, Oklahoma.[5]  Plaintiff was transferred to OSR, a medium/minimum security level prison located in Granite, Oklahoma, on May 20, 2010.

2. Defendant Hernandez is employed with ODOC as a Correctional Security Officer IV at OSR.

3. On May 11, 2011, Plaintiff was assigned to cell C-3-11 at OSR.

4. On June 27, 2011, Plaintiff was assaulted inside his cell by other inmates.

5. Events that may occur in an inmate's cell cannot be viewed from the video monitor.

6. Ms. Hernandez became aware of Plaintiff's injuries at approximately 8:00 p.m. on June 27, 2011, while she was locking the unit down for an inmate count.  Ms. Hernandez immediately informed Shift Supervisor McGill that Plaintiff had requested to be seen by

---

[5]According to public records of the Oklahoma Department of Corrections ("ODOC"), Plaintiff has been incarcerated in the custody of the ODOC on numerous occasions, beginning in 1991. http://www.doc.state.ok.us (offender lookup last accessed September 20 2012). He has previous convictions and incarcerations for Assault and Battery with a Dangerous Weapon, Burglary in the Second Degree, Assault and Battery on a Police Officer, Possession of Firearm by Person Under Department of Corrections Supervision, and Prisoner Placing Body Fluid on Government Employee.  He is presently incarcerated serving a seven-year revocation term of imprisonment for his conviction in the District Court of Woodward County, Case No. CF-99-301, of Assault and Battery on a Police Officer.

medical services.[6]

    7.  On June 28, 2011, Plaintiff was transferred out of OSR for state court, and he was

transferred back to OSR on July 6, 2011. Special Report, Att. 4.  On August 15, 2011,

Plaintiff was transferred from OSR to Lawton Correctional Facility. Special Report, Att. 4.[7]

At the time he filed this action, Plaintiff was in custody at the James Crabtree Correctional

Center in Helena, Oklahoma.

IV. <u>Eleventh Amendment Immunity</u>

    Plaintiff does not specify in the Amended Complaint whether he is suing Defendant

Hernandez in her individual and/or official capacities as a state correctional official. In a

statement attached to his responsive pleading, Plaintiff states that he is suing "all defendants

in this action at this time . . . in their individual capacities as state employees." Plaintiff's

Response (Doc. # 124), att. 3, at 2.  Plaintiff has not, however, requested leave to amend his

Complaint to name Defendant Hernandez solely in her individual capacity.

_____

    [6]Plaintiff avers in a statement attached to his responsive pleading, made under penalty of
perjury, that Defendant Hernandez "was aware that someone had been injured . . . when she let 3
to 5 prisoners walk out of pod 3, over to Pod 2, of C-unit, where there were no scheduled movements
after the evening meal on 6-27-11." Response (Doc. # 124), att. 1, at 4.  However, Plaintiff does not
state how, even assuming the truth of Plaintiff's allegations, allowing inmates to "walk out of" one
pod would have alerted Defendant Hernandez to Plaintiff's injuries. Thus, Plaintiff's statement does
not create a material issue of fact with respect to the statement of undisputed facts contained in
Defendant Hernandez's Motion for Summary Judgment.

    [7]According to the most recent notice of change of address filed by Plaintiff on May 24, 2012,
Plaintiff has been transferred to the James Crabtree Correctional Center. Doc. # 96.  However, he
was temporarily confined at the Oklahoma Forensic Center in August 2012 for a mental competency
evaluation as directed by the state district judge overseeing his pending state criminal case(s). Docs.
# 116, 117.

With respect to any claim asserted by Plaintiff against Defendant Hernandez in her official capacity, Defendant Hernandez moves for dismissal pursuant to Fed.R.Civ.P. 12(b)(1) on the ground of Eleventh Amendment immunity. See Ruiz v. McDonnell, 299 F.3d 1173, 1180-1181 (10th Cir. 2002)(Eleventh Amendment immunity defense is challenge to federal court's subject matter jurisdiction).

The Eleventh Amendment bars an action for money damages in federal court against a state by the citizens of that state. Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 238 (1985). This immunity extends to actions against a state agency, Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 100 (1984), and to state officials acting in their official capacities. Edelman v. Jordan, 415 U.S. 651, 662-663 (1974). "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's state employer. As such it is no different from a suit against the State itself." Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 and n. 10 (1989). Accordingly, Defendant Hernandez in her official capacity, as an employee of ODOC, is immune from Plaintiff's claims seeking monetary damages. See Eastwood v. Dep't of Corr. of State of Okl., 846 F.2d 627, 631 (10th Cir. 1988)("[T]he DOC is an arm of the state and should be entitled to [Eleventh Amendment] immunity.").

Consequently, with respect to any claim by Plaintiff asserted against Defendant Hernandez in her official capacity, Defendant Hernandez's Motion to Dismiss should be granted, and Defendant Hernandez should be dismissed from the action pursuant to Fed.R.Civ.P. 12(b)(1) with prejudice to the extent she is sued in her official capacity.

V. Qualified Immunity

Defendant Hernandez moves for summary judgment with respect to Plaintiff's claims against her in her individual capacity.   Under the doctrine of qualified immunity, "government officials are not subject to damages liability for the performance of their discretionary functions when their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Buckley v. Fitzsimmons, 509 U.S. 259, 268 (1993)(internal quotation omitted).  See also Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). "Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." Ashcroft v. al-Kidd, __ U.S. __ 131 S.Ct. 2074, 2080 (2011)(quoting Harlow, id.).  District courts have "discretion to decide which of the two prongs of qualified-immunity analysis to tackle first." Id.  Thus, "[i]n resolving a motion to dismiss based on qualified immunity, a court must consider whether the facts that a plaintiff has alleged make out a violation of a constitutional right, and whether the right at issue was clearly established at the time of defendant's alleged misconduct." Leverington v. City of Colo. Springs, 643 F.3d 719, 732 (10th Cir. 2011)(quotations and ellipses omitted).

"The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Thomas v. Durastanti, 607 F.3d 655, 669 (10th Cir. 2010( quotation omitted).  "Ordinarily, in order for the law to be clearly established, there must be a Supreme

Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." Medina v. City and County of Denver, 960 F.3d 1493, 1498 (10th Cir. 1992). "While there does not have to be a case that is factually identical, it must still be apparent to a reasonable officer in light of pre-existing law that his conduct was unlawful." Thomas, 607 F.3d at 669. "The plaintiff bears the burden of citing . . . what he thinks constitutes clearly established law." Id.

Plaintiff has alleged that Defendant Hernandez was deliberately indifferent to Plaintiff's safety needs when she, as retaliation for Plaintiff's failure to deliver a "package" for her to another inmate, directed other OSR inmates who were not confined to Plaintiff's living "pod" to physically assault Plaintiff and rob Plaintiff of his personal property on the evening of June 27, 2011, and then allowed those inmates to leave the "pod" with Plaintiff's personal property in order to return to their cells in a different "pod" by opening the door to the "pod."

Plaintiff alleges that Defendant Hernandez violated her constitutional duty to protect him from being assaulted by other inmates. To establish Plaintiff's Eighth Amendment claim, Plaintiff must show that (1) the alleged deprivation is objective, "sufficiently serious," such that the inmate "is incarcerated under conditions posing a substantial risk of serious harm" and (2) the prison official acted with "deliberate indifference," meaning the official knew of and disregarded that  risk by failing to take reasonable measures to abate the risk. Farmer v. Brennan, 511 U.S. 825, 834, 837, 847 (1994). Plaintiff's claim against Defendant Hernandez may also be construed to assert an Eighth Amendment claim of excessive force.

12

To prevail on this claim, a plaintiff must establish that the force was not applied in a good faith effort to maintain or restore discipline, but "maliciously and sadistically to cause harm," and that the plaintiff suffered an injury. Hudson v. McMillian, 503 U.S. 1, 6-7 (1992)(internal quotations and citation omitted).

Plaintiff has presented sworn declarations in response to Defendant Hernandez's dispositive motion attesting that the events occurred as he alleged in his Amended Complaint.  In support of her Motion for Summary Judgment, Defendant Hernandez solely relies on her own affidavits in which she denies that she was responsible for the assault upon Plaintiff and denied that she was aware of Plaintiff's injuries until after the assault.  Special Report (Doc. # 104), Atts. 7, 8.  There is no dispute that Plaintiff was injured and received medical treatment on June 27, 2011. Medical treatment records included in the Special Report reflect that on June 27, 2011, at 10:14 p.m., Plaintiff was

> seen in medical due to an altercation with another offender or offenders.  Left eye swollen shut, redness with bruiseing [sic]. . . . Has redness forehead.  Has a 6" by 4' [sic] abrasion on left side of back.  Has a small cut on back of head, which was cleaned and [bandaged].  Offender complaints are back is sore, left arm hurts, [but] has no injury to left arm at this time. [He complains of ] left eye hurting.  Gave offender ice pack for eye.

Special Report (Doc. # 104), Att. 13.  As the movant, Defendant Hernandez "bears the initial burden of presenting evidence to show the absence of a genuine issue of material fact." Trainor v. Apollo Metal Specialties, Inc., 318 F.3d 976, 979 (10th Cir. 2002). However, Defendant Hernandez's Motion does not negate an essential element of Plaintiff's claim or show that Plaintiff does not have sufficient evidence to carry his burden of proof at trial.

Defendant Hernandez makes only a conclusory assertion that Plaintiff has not presented enough evidence to show a constitutional violation.   Under these circumstances, the undisputed facts presented by Defendant Hernandez in the Motion for Summary Judgment do not show that she is entitled to judgment as a matter of law regarding Plaintiff's Eighth Amendment claims.

<u>RECOMMENDATION</u>

Based on the foregoing findings, it is recommended that Defendant Hernandez's Motion to Dismiss be GRANTED to the extent Plaintiff seeks relief against Defendant Hernandez in her official capacity and judgment should enter dismissing with prejudice Plaintiff's claims against Defendant Hernandez in her official capacity. It is further recommended that Defendant Hernandez's Motion for Summary Judgment be DENIED to the extent Plaintiff seeks relief against Defendant Hernandez in her individual capacity.  The parties are advised of their respective right to file an objection to this Supplemental Report and Recommendation with the Clerk of this Court by _____October 15th_____, 2012, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72.  The failure to timely object to this Supplemental Report and Recommendation would waive appellate review of the recommended ruling. <u>Moore v. United States</u>, 950 F.2d 656 (10th Cir. 1991); <u>cf. Marshall v. Chater</u>, 75 F.3d 1421, 1426 (10th Cir. 1996)("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

This Supplemental Report and Recommendation does not dispose of all issues referred

to the undersigned Magistrate Judge in the captioned matter.

ENTERED this ___25th___ day of ____September____, 2012.

GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE